IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY PROVENCIO, as next friend
of Natasha Provencio, Incapacitated,
OSCAR MENDEZ, MEAGAN MENDEZ, and
MARTHA MENDEZ,

   Plaintiffs,

v.                  No. CIV 05-623 JB/ACT

FORD MOTOR COMPANY, and
GUSTAVO MENDEZ,

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand and Request for Leave to File a First Amended Complaint, filed July 5, 2005 (Doc. 4). The Court held an evidentiary hearing on this motion on September 8, 2005. The primary issue is whether the Plaintiffs have fraudulently joined Defendant Gustavo Mendez ("Gustavo") so that complete diversity exists between the parties. Because the Defendant Ford Motor Company ("Ford") failed to meet its burden of showing with complete certainty upon undisputed evidence that the Plaintiffs cannot state a cause of action against Gustavo, the Court will grant the motion to remand. As a result of the Court's finding that it has no jurisdiction, the Court declines to rule on the request for leave to file an amended complaint.

## FACTUAL BACKGROUND

This suit arose from an accident that occurred on April 3, 2005. See Notice of Removal, Exhibit A ("Complaint") ¶ 1, at 1, filed June 3, 2005 (Doc. 1). While driving northbound on

Interstate 25, Oscar Mendez, the driver of a 1987 Ford Bronco II, "engaged in an emergency avoidance maneuver" to avoid a collision with another vehicle on the freeway. See id. ¶ 7, at 2. As a result, the vehicle rolled over. See id. Oscar and Meagan Mendez, a passenger in the Bronco, allege that they "suffered physical and emotional injuries" from the accident. Id. ¶ 8, at 2. Natasha Provencio, a passenger in the back seat of the Bronco, fell into a coma following the accident. See id.

## PROCEDURAL BACKGROUND

The Plaintiffs are Henry Provencio, as next friend of the incapacitated Natasha Provencio, and Oscar, Meagan, and Martha Mendez, one of the alleged purchasers of the Ford Bronco II. See id. ¶¶ 4, 15, at 2, 3. The Plaintiffs originally filed suit on May 5, 2005 in the First Judicial District Court of New Mexico against Ford, the manufacturer of the Bronco, and Gustavo, the person who sold the Bronco to the Mendez family. See id. ¶¶ 12, 25, at 3, 5; Motion to Remand and for Leave to File First Amended Complaint at 4 ("Motion to Remand"), filed July 5, 2005 (Doc. 4); Response at 1, filed July 26, 2005 (Doc. 5). In their Complaint, the Plaintiffs alleged a strict liability cause of action under New Mexico law against Ford and Gustavo because the Bronco II was an allegedly "defective and unreasonably dangerous" product that the former had assembled and distributed and that the latter had sold to the Mendez family. Complaint ¶¶ 12-13, 25, at 3, 5. In addition, the Plaintiffs requested punitive damages against Ford for allegedly distributing the Bronco II with knowledge that it would "roll over with greater frequency than any other SUV in the market place" and engaging in a "conspiracy" to conceal this fact from the public. Id. ¶¶ 20-21, at 9-10.

On June 3, 2005, Ford filed a Notice of Removal in the United States District Court for the District of New Mexico, requesting that the case be removed to federal district court under 28 U.S.C.

§ 1332 on the basis of diversity of citizenship between the parties.  See Notice of Removal at 4.  Ford asserts that complete diversity exists because Ford is a Delaware corporation with its principal place of business in Michigan and the Plaintiffs are citizens of New Mexico.  See id. at 2.  Ford also stated its belief that the amount in controversy exceeded $75,000, the statutory minimum for a diversity action under § 1332.  See id. at 3-4.  Conceding that it did not know Gustavo's citizenship, Ford explained that it believed the Plaintiffs fraudulently joined Gustavo to this action.  See id. at 2-3.

The Plaintiffs filed their Motion to Remand on July 5, 2005, contending that Gustavo is a citizen of New Mexico, thereby destroying complete diversity between the parties because the Plaintiffs are also citizens of New Mexico.[1]  Motion to Remand at 3.  The Plaintiffs alternatively request leave to amend their complaint to include a claim of negligence against Gustavo and to add Natasha Provencio as a plaintiff because she has regained consciousness.  See id. at 2-3.

In response, Ford charges again that the Plaintiffs fraudulently joined Gustavo to this action because Gustavo is not a "supplier" and therefore cannot be strictly liable under New Mexico law. Response at 2-5.  Ford concludes that it is the only proper defendant in this action and that complete diversity exists between it and the Plaintiffs.  See id. at 2.  Ford further argues that the attempt to add a negligence claim against Gustavo Mendez is an effort to "oust" this Court of diversity jurisdiction in violation of 28 U.S.C. §§ 1367(b) and 1447(e).  Id. at 5-6.  Finally, Ford consents to the Plaintiffs' amendment to add Natasha Provencio as a plaintiff in her own capacity.  See id. at 6.

At the hearing on September 8, 2005, Ford called Gustavo to the stand and asked him where

---

[1] The Plaintiffs give Gustavo's address as "437 La Vega Dr. SW, Albuquerque, NM 87105." Motion to Remand at 2.

he resided.  <u>See</u> Transcript of Hearing at 9:13 (taken September 8, 2005).[2]  Gustavo replied that he

has lived at "437 La Vega" in Albuquerque, New Mexico, for the last four years.  <u>Id.</u> at 9:14-18.

      Gustavo works in the construction business and stated at the hearing that he does not sell cars

for a living.  <u>See id.</u> at 11:6-9.  Gustavo also said he does not have a New Mexico license to sell

automobiles.  <u>See id.</u> at 13:17-19.  Gustavo admitted at the hearing that he is Martha Mendez'

brother-in-law and Oscar Mendez' uncle.  <u>See id.</u> at 10:19-20.  Indeed, Gustavo testified at the

hearing that he sold another vehicle for $5,000.  <u>See id.</u> at 12:20-23.

## LAW REGARDING REMOVAL

      Under 28 U.S.C. § 1332(a), a federal district court possesses subject-matter jurisdiction over

a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

<u>See</u> <u>Johnson v. Rodrigues</u>, 226 F.3d 1103, 1107 (10th Cir. 2000); 28 U.S.C. § 1332(a).  Diversity

between the parties must be complete.  <u>See</u> <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996); <u>Radil</u>

<u>v. Sanborn W. Camps, Inc.</u>, 384 F.3d 1220, 1225 (10th Cir. 2004).  If a civil action filed in state court

satisfies the requirements for diversity subject-matter jurisdiction, the defendant may invoke 28

U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such

action is pending."  28 U.S.C. § 1441(a); <u>See</u> <u>Huffman v. Saul Holdings Ltd. Pshp.</u>, 194 F.3d 1072,

1076 (10th Cir. 1999)("'When a plaintiff files in state court a civil action over which the federal

district courts would have original jurisdiction based on diversity of citizenship, the defendant or

defendants may remove the action to federal court. . . .'")(quoting <u>Caterpillar Inc. v. Lewis</u>, 519 U.S.

at 68).  The plaintiff may thereafter attack removal by filing a motion in federal district court to

_____

    [2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

remand the case back to state court.[3]  See Caterpillar Inc. v. Lewis, 519 U.S. at 69; Huffman v. Saul

Holdings Ltd. Pshp., 194 F.3d at 69 (citation omitted); 28 U.S.C. § 1447(c).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and

particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited

tribunals."  Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005)(citing Shamrock

Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest

Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "[A]ll doubts are to be resolved against

removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).  "The burden of

establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao, 296

F.3d 952, 955 (10th Cir. 2002).

## LAW REGARDING FRAUDULENT JOINDER

Fraudulent joinder[4] is "the filing of a frivolous or otherwise illegitimate claim against a

non-diverse defendant solely to prevent removal."  Filla v. Norfolk & Southern Ry., 336 F.3d 806,

809 (8th Cir. 2003).  See Smoot v. Chicago, R. I. & P. R. Co., 378 F.2d 879, 882 (10th Cir. 1967)

(describing fraudulent joinder as either "[t]he joinder of a resident defendant against whom no cause

of action is stated" or where "a cause of action [is] stated, [but] no cause of action exists").  The

---

[3] 28 U.S.C. § 1447(c) mandates that "[a] motion to remand the case [from federal court to state court] on the basis of any defect other than lack of subject[-]matter jurisdiction must be made within 30 days after the filing of the notice of removal."  The Plaintiffs' motion to remand does not fall within the 30-day requirement of section 1447(c) because it is based on lack of subject-matter jurisdiction, namely diversity jurisdiction.  See Motion to Remand at 3.  See also Caterpillar Inc. v. Lewis, 519 U.S. at 69 ("This 30-day limit [in section 1447(c)] does not apply, however, to jurisdictional defects.").

[4] The Fifth Circuit refers to fraudulent joinder as "improper joinder."  McDonal v. Abbott Labs., 408 F.3d 177, 180 n.1 (5th Cir. 2005)(citing Smallwood v. Ill. Cent RR Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004)(en banc)).

diverse defendant may combat this "patent sham" by challenging the substance of the claim against the non-diverse defendant.  Smoot v. Chicago, R. I. & P. R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).  Although it is unusual for a federal district court to examine a defendant's liability in deciding a motion to remand, "'upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal.'" Id. at 881-82 (citing Wilson v. Republic Iron Co., 257 U.S. 92 (1921), and Leonard v. St. Joseph Lead Co., 75 F.2d 390 (8th Cir. 1935)).  See also Dodd v. Fawcett Publications, Inc., 329 F.2d at 85 ("But upon specific allegations of fraudulent joinder the court may pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available." (citations omitted)).

In an unpublished decision, the Tenth Circuit stated that the fraudulent joinder standard is "more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced."  Montano v. Allstate Indem., No. 99-2225, 2000 U.S. App. LEXIS 6852, at *5 (10th Cir. April 14, 2000)(citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851-53 (3d Cir. 1992)).[5]  Other circuits agree that the fraudulent joinder standard has more teeth than that for rule 12(b)(6).  See, e.g., Hartley v. CSX Transp., 187 F.3d 422, 424 (4th Cir. 1999)(citation omitted); Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992).  At least two other circuits

---

[5] The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria and the rules therefore allow citation to this unpublished decision.

make the point that the fraudulent joinder standard is no less exacting than that for rule (12)(b)(6). Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004); Sessions v. Chrysler Corp., 517 F.2d 759, 761 (9th Cir. 1975)(citation omitted).

The diverse defendant who chooses the route of attack using materials not in the complaint walks a treacherous path, for he must show "with complete certainty upon undisputed evidence" that the non-diverse defendant is not liable. Smoot v Chavez, R.I. & P.R. Co., 378 F.2d. at 882. See McLeod v. Cities Service Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)(teaching that "fraudulent joinder, like any other allegation of fraud, must be pleaded with particularity and proven with certainty"). Indeed, one unpublished Tenth Circuit case commands the diverse defendant to prove "that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." Montano v. Allstate Indem., 2000 U.S. App. LEXIS 6852, at *4-5. If the diverse defendant successfully meets this burden, the "district court can assume jurisdiction over [the] case even if, *inter alia*, there are non[-]diverse named defendants at the time the case is removed." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)(citations omitted). On the other hand, if the defendant fails to establish with complete certainty upon undisputed evidence that the non-diverse defendant is not liable, then the Court must remand the case back to state court without ruling further in the matter. See Cunningham v. BHP Petroleum Gr. Brit. PLC, 414 F.3d 1169, 1175 (10th Cir. 2005)(citing Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)).

## ANALYSIS

In their motion to remand, the Plaintiffs essentially ask the Court to grant two requests: to remand the case back to state court for lack of subject-matter jurisdiction and for leave to file an amended complaint. See generally Motion to Remand. The motion to remand is the more immediate

request, because it concerns the Court's power to proceed in this matter at all.  If the Court lacks subject-matter jurisdiction at this point, before leave to amend has been granted, then the Court is "powerless to continue" to the request for leave to amend.  Cunningham v. BHP Petroleum Gr. Brit. PLC, 414 F.3d at 1175 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.")(citing Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d at 410).  While granting leave to amend might, at first blush, appear to be an act of minor consequence that would resolve whether the Plaintiffs have a clear complaint against Gustavo, the Tenth Circuit recently instructed  that "any post-removal actions taken by the court" when the court had no jurisdiction in the first place are "ineffectual."  Id. (quoting Brown v. Francis, 75 F.3d 860, 867 (3d Cir. 1996)).  Thus, as a threshold matter, the Court will address the Plaintiffs' motion for remand and then, if the Court has jurisdiction, consider the Plaintiffs' request for leave to file an amended complaint.

## I. THE COURT FINDS THAT FORD HAS NOT MET ITS BURDEN ON FRAUDULENT JOINDER.

The Court does not have subject-matter jurisdiction over this case, because complete diversity does not exist between the parties.  In light of the fact that the Plaintiffs as well as Gustavo are citizens of New Mexico, complete diversity does not exist between the parties.  See Complaint ¶ 2, at 1; Notice of Removal at 2.

Ford attempts to rebut the Plaintiffs' contention of non-diversity by arguing that the Plaintiffs fraudulently joined Gustavo for the purpose of defeating diversity.  See Response at 2.  The Court's task in resolving the Plaintiffs' motion is to determine whether Ford has carried its burden of showing with complete certainty upon undisputed evidence that the Plaintiffs cannot maintain a cause of action

-8-

against Gustavo.  All doubts are to be resolved against removal.  The Court discerns two possible claims against Gustavo: negligence and strict liability.

### 1.        The Court Cannot Say That There is no Claim for Negligence.

Ford does not, and cannot, seriously dispute that the Plaintiffs may have a negligence claim against Gustavo.  See Transcript of Hearing at 7:1-15.  The Plaintiffs believe that Gustavo knew or should have known that the Bronco's tires were two sizes too large for safe driving and would lead to the vehicle rolling over.  See Motion to Remand at 3.  See also Plaintiffs' First Amended Complaint ¶¶ 28-30, at 6-7.  As such, the Plaintiffs possibly have a negligence claim against Gustavo.

Ford maintains, however, that the Court cannot consider the possible negligence action because the Plaintiffs did not plead it in their Complaint.  See Transcript of Hearing at 15:10-14.  While the Court must be mindful not to litigate on the Plaintiffs' behalf, see Adler v. Wal-Mart Stores, 144 F.3d 664, 672 (10th Cir. 1998)(explaining that district courts "have a limited and neutral role in the adversarial process" and must be "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it" (citation omitted)), if the Tenth Circuit's language is taken literally, then the test is not whether the Plaintiffs actually alleged a negligence claim, but whether "there is no possibility that [the Plaintiffs] would be able to establish a cause of action against [the Defendants] in state court."  Montano v. Allstate Indem., 2000 U.S. App. LEXIS 6852, at *4-5 (citation omitted).  Under this broad reading of Montano v Allstate Indemnity, the Court needs to determine whether the Plaintiffs could possibly state any claim -- including negligence -- against Gustavo.

At the hearing, the Plaintiffs' counsel indicated that their strict liability claim actually sounded to a certain degree in negligence as well.  See Transcript of Hearing at 18:21-24.  The Plaintiffs'

counsel explained to the Court that the proposed amendment stating a claim of negligence against Gustavo was made merely "to clarify the pleadings" to make it "clear that what [the Plaintiffs] were alleging against Mr. Mendez is more of a negligence claim." Id.  The difficulty, however, is that the count against Gustavo in the complaint is styled "Strict Liability Against Gustavo Mendez."

To the extent that the Plaintiffs have managed to state a cause of action for negligence in their strict liability cause of action, the Court finds less than complete certainty that there is no claim against Gustavo.  The dearth of facts concerning Gustavo's alleged negligence leads the Court to conclude that it is far from certain that a negligence claim could not be sustained.  There are no allegations in the Complaint that suggest Gustavo should not or could not have known about any alleged defect in the Ford Bronco.  While the evidence may not ultimately establish Gustavo's liability for negligence, the test for fraudulent joinder is whether that liability can certainly not be shown.

In any case, while it might be difficult to read a negligence claim in the Plaintiffs' strict liability count, resolving all doubts against removal, it is possible the strict liability claim contains within its ambit a cause of action for negligence as well.  As the Plaintiffs point out, New Mexico has recognized that the delineation between the two causes of action is not such that strict liability is strict liability and negligence is negligence and never the twain shall meet.  See id. at 20:3-11.  In fact, the Uniform Jury Instructions states that "a supplier in the business of putting a product on the market is liable for harm proximately caused by an *unreasonable risk of injury* resulting from a condition of the product or from a manner of its use."  Uniform Jury Instruction 13-1406 (emphasis added).  An "unreasonable risk of injury" is defined as "a risk which a reasonably prudent person having full knowledge of the risk would find unacceptable."  Uniform Jury Instruction 13-1407.  By examining the reasonableness of the risk of injury and the conduct of a reasonably prudent person, strict liability

-10-

contains within it a "vestige" of the test for negligence.  Committee Comment to Uniform Jury Instruction 13-1407.  New Mexico courts have also recognized a degree of "overlap between claims for products liability and claims for ordinary negligence."  <u>Parker v. St. Vincent Hosp.</u>, 122 N.M. 39, 46, 919 P.2d 1104, 1111 (Ct. App. 1996).

Furthermore, the Plaintiffs' counsel explained at the hearing why the Complaint failed to definitively set out a cause of action for negligence.  Plaintiff Henry Provencio apparently wanted to file suit quickly to prevent other family members from taking advantage of Natasha Provencio's coma to seize control of her care away from him.  <u>See</u> Transcript of Hearing at 21:13-20.  The Plaintiffs' counsel told the Court that any poor drafting of the Complaint was a result of the extraordinary circumstances that this family situation and Natasha's incapacity presented.  <u>See id.</u>  Thus, there has been no fraudulent joinder of Gustavo with regard to a possible negligence claim.

### 2.     <u>In the Alternative, the Court Cannot say that There is no Strict Liability Claim</u>.

If the Court is properly considering the Plaintiffs' possible negligence claim, then there can be little dispute that remand is warranted.  If, on the other hand, the issue is whether the Plaintiffs "possibly" have a strict liability claim against Gustavo, the issue is more difficult.  Nevertheless, the Court believes that, resolving all doubts against removal, removal is still warranted.

Ford argues that the Plaintiffs cannot possibly establish Gustavo's liability for strict liability because he is not a "supplier" under New Mexico law.  <u>Id.</u>  Ford urges the Court to disregard the strict liability claim against Gustavo and recognize only the claims against Ford.  <u>See id.</u>  With Ford as the only properly joined defendant, diversity would exist because Ford is not a citizen of New Mexico.  <u>See id.</u>

-11-

Ford, however, has not met its burden of proving fraudulent joinder with complete certainty upon undisputed evidence.  Over thirty years ago, New Mexico adopted the Second Restatement's principle of strict products liability.  See Smith v. Bryco Arms, 131 N.M. 87, 93, 33 P.2d 638, 644 (Ct. App. 2001)(citing Stang v. Hertz Corp., 83 N.M. 730, 732, 497 P.2d 732, 734 (1972)).  In New Mexico, "a supplier of products is liable for harm proximately caused by an unreasonable risk of injury resulting from a condition of the product or from a manner of its use" even when "all possible care has been used by the supplier in putting the product on the market."  Id. (citing Uniform Jury Instruction 13-1406 and Fernandez v. Ford Motor Co., 118 N.M. 100, 109, 879 P.2d, 100, 110 (Ct. App. 1994)).   A supplier is "one engaged in the business of selling or otherwise distributing products."  Spectron Dev. Lab. v. American Hollow Boring Co., 123 N.M. 170, 174, 936 P.2d 852, 856 (Ct. App. 1997)(citation omitted).

Ford maintains that it is certain that Gustavo is not a supplier because he is not engaged in the business of selling or otherwise distributing products onto the market.  See Response at 2.  Ford points out that the Plaintiffs did not aver in their Complaint that Gustavo sells cars for a living.  See id. at 3.  Furthermore, Ford characterizes the transaction between Gustavo and the Mendez family as the sale of an automobile among family members instead of between, for instance, retailer and customer.  See id. at 4.

Ford explains that the Plaintiffs "have not cited to one case in which a family member selling a vehicle to another family member would be considered a 'supplier' under New Mexico law."  Id. at 4.  Ford also suspects that the Plaintiffs are not actively pursuing a claim against Gustavo because Gustavo is related to the Plaintiffs.  See id.  As proof of the Plaintiffs' alleged halfheartedness in litigating against Gustavo, Ford highlights that the Plaintiffs have not yet served Gustavo.  See id.

While Ford's arguments have force, Ford fails to carry its burden by obliterating all doubt that the Plaintiffs could establish a strict liability claim against Gustavo. Although Ford correctly notes that the Plaintiffs do not cite a case stating that one family member can be a supplier to another family member, Ford does not cite a New Mexico case that says a family member cannot be a supplier to another family member. See generally Response. Ford has not shown that the mere fact of a blood relation between a purported supplier and purchaser is dispositive under New Mexico law. Pushing Ford's contention to a logical extreme, the owner of a Ford dealership might not be a supplier when he sells a car to a family member even though the former is clearly engaged in the business of selling or otherwise distributing cars.

On a more basic level, Ford contends that this particular seller, Gustavo, is not a supplier because he does not sell cars for a living. See id. at 3. At this stage, however, Ford must show with complete certainty upon undisputed evidence that Gustavo is not liable under a strict liability cause of action. See Smoot v. Chicago, R. I. & P. R. Co., 378 F.2d at 882. Instead of citing cases that sweep away all doubt on this score, Ford asserts that Gustavo cannot possibly be a supplier because selling cars is not his day job and he does not have a professional license to sell automobiles. See Transcript of Hearing at 14:19-24.

Again, Ford does not lead the Court to any cases or statutes that go as far as Ford would like the law to say. As for the Court's independent research on this issue, New Mexico cases have decisively rejected the contention that a defendant can be a supplier when it did not actually sell the defective item to someone. For example, in Trujillo v. Sonic Drive-In/Merritt, 122 N.M. 359, 924 P.2d 1371 (Ct. App. 1996), the court was unpersuaded that a fast-food restaurant was the supplier of the ice-cream machine that injured one of its employees while the employee cleaned it. See id. at

-13-

365-66, 924 P.2d at 1377-78.  In <u>Arenivas v. Continental Oil Co.</u>, 102 N.M. 106, 692 P.2d 31 (Ct. App. 1983), the operator and part owner of an oil field was not the supplier of a pumping unit used on the land because it "did not in any way place the pumping unit in the stream of commerce."  <u>Id.</u> at 109, 692 P.2d at 34.  Finally, <u>Livingston v. Begay</u>, 98 N.M. 712, 652 P.2d 734 (1982), concluded that "a motel operator is not strictly liable for defects in the fixtures and furnishings of the rooms he holds out to the public" because the motel operator has not introduced those items into the "stream of commerce."  <u>Id.</u> at 716-17, 652 P.2d at 739.

The thread that binds these cases is that, in each case, the alleged supplier did not sell the defective product to anyone.  While Gustavo is certainly no Henry Ford, the Plaintiffs' contention that Gustavo is a supplier is stronger than in those New Mexico cases.  Unlike the defendants in those cases, Gustavo sold the item, namely the Bronco, that caused the injury.  Transcript of Hearing at 10:21-11:5.

Admittedly, Gustavo indicated that the latter automobile was his own personal possession. <u>Id.</u>  Also, Gustavo's occupation in the construction business and the appearance of an intra-family transaction heightens the possibility that Gustavo is not in fact a supplier.  Yet the Court must be completely certain that no cause of action exists against Gustavo to deny the Plaintiffs' motion to remand.  <u>See</u> <u>Smoot v. Chicago, R. I. & P. R. Co.</u>, 378 F.2d at 882.  Even if it is most unlikely that the Plaintiffs can prevail against Gustavo on these facts alone, the test is whether the Court is completely certain that the Plaintiffs cannot recover from Gustavo.  Given that Gustavo actually sold the Bronco to the Mendez family and that Ford rests its argument mainly on conclusory statements, the Court cannot say at this juncture that the Plaintiffs have no hope of prevailing against Gustavo. In sum, the Court concludes that Ford falls short of proving with complete certainty that the Plaintiffs

-14-

could not win a judgment against Gustavo.

The Court emphasizes that it is not saying that Gustavo, or others like him who have sold only one or two items, is a supplier under New Mexico law.  Indeed, if a New Mexico court, or the federal court sitting in diversity, decides to clarify this point in the future, it may very well join those other jurisdictions that have found an occasional seller to not be a supplier.  See, e.g., Lemley v. J & B Tire Co., 426 F. Supp. 1376, 1377 (W.D. Pa. 1977); Sukljian v. Charles Ross & Son Co., 69 N.Y.2d 89, 95-96, 503 N.E.2d 1358, 1360-61 (1986).  In fact, it is possible that, if this matter came before this Court on a motion for summary judgment with the same record which is before it now, the Court might be inclined to rule for Ford.

But in that case, the Court would be deciding an issue of state law that the New Mexico courts have not yet squarely addressed.  This stage -- a motion to remand -- is not the proper place to decide legal issues that the state courts have not decided.  That the Plaintiffs may not be right is not the standard; rather, there must be no possibility the Plaintiffs have a claim against Gustavo.

In summary, the Court finds little in the record to cast doubt as yet on any negligence claim and Ford has not carried its burden of showing that there is no strict liability cause of action.  Without a successful claim of fraudulent joinder, the Court finds that complete diversity does not exist because Gustavo and the Plaintiffs are all citizens of New Mexico.  Consequently, the Court grants the Plaintiffs' motion to remand for lack of subject-matter jurisdiction.

## II.    THE COURT DECLINES TO REACH THE REQUEST FOR LEAVE TO AMEND.

In light of the Court's conclusion that it does not have subject-matter jurisdiction, the Court should not consider any further matters in this case and will decline to address any proposed amendment.  See Cunningham v. BHP Petroleum Gr. Brit. PLC, 414 F.3d at 1175 (citations omitted).

The Court will remand the case to state court because it has no power to continue presiding over this case.  See id.  Without jurisdiction, the Court is like a car without any gasoline, a machine that can do nothing until this defect is rectified.  So, too, the Court must return this case to where it belongs – in state court – and refrain from pronouncing any more on this matter.

        **IT IS ORDERED** that Plaintiffs' Motion to Remand to the First Judicial District, Santa Fe County, State of New Mexico is granted.  Given that the Court is without subject-matter jurisdiction over this matter, the Court declines to rule on the Plaintiffs' request for leave to file an amended complaint.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Gilbert Arrazolo
Arrazolo Law, P.C.
Albuquerque, New Mexico

        *Attorney for the Plaintiffs*

Lee Mickus
Ashley Krause
Snell & Wilmer, LLP
Denver, Colorado

 – and –

Jeffrey Croasdell
Bryan J. Davis
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

        *Attorneys for Defendant Ford Motor Company*

-16-